IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEARWATER INSURANCE COMPANY,<br><br>    Petitioner,<br>  v.<br><br>GRANITE STATE INSURANCE COMPANY, et al.,<br><br>    Respondents.<br>                                  / | No. C 06-4472 SI<br>No. C 06-4500 SI<br>No. C 06-4501 SI<br>No. C 06-4502 SI<br><br>**ORDER GRANTING PETITION TO COMPEL ARBITRATION AND APPOINTMENT OF THIRD ARBITRATOR** |

The petition of Clearwater Insurance Co. to compel arbitration and the appointment of a third arbitrator came on regularly for hearing on September 29, 2006. Having considered the papers of the parties and the arguments of counsel, the petition is GRANTED in each of the four related actions, for the reasons set out below.

**BACKGROUND**

These four related petitions to compel arbitration arise out of a series of disputes between Clearwater Insurance Company (petitioner) and Granite State Insurance Company, New Hampshire Insurance Company, and The Insurance Company of the State of Pennsylvania (respondents; all subsidiaries of AIG, Inc.), over outstanding balances allegedly owed by petitioner under four separate contractual agreements. Each of the contracts at issue contains an identical arbitration clause, requiring three arbitrators in the event of a dispute. Under the clause, each party is to pick one arbitrator, and the two arbitrators are to pick a third (the "umpire"). In the event that within thirty days of their appointment the arbitrators cannot agree on an umpire, "each of them shall name two, of whom the other

shall decline one and the decision shall be made by drawing lots."[1]  (Pet. ¶ 9.)

In each of the related cases at issue here, the two appointed arbitrators have been unable to agree on an umpire. Each party blames the other for this failure to proceed. Petitioner alleges that respondents have refused to move forward with the "exchange of slates." (Pet. ¶ 3.) Respondents claim that they have been "ready and willing to engage in the process of appointing a third arbitrator or umpire in accordance with the terms of the contract." (Opp'n ¶ 14.) Similarly, both sides request that the Court enforce the arbitration agreement: petitioner "requests that the Court order [respondents] to proceed promptly with selection of the Third Arbitrator pursuant to the terms of the arbitration clause in the Reinsurance Agreement" (Pet. ¶ 19); respondents "suggest that the Court order the parties promptly begin the process of sending umpire questionnaires (detailing the background and disclosing potential conflicts) to the selected candidates" (Oppo. ¶ 14).

In addition to the four related cases before the Court, a fifth allegedly similar case between the parties was filed in Superior Court of the Commonwealth of Massachusetts, Suffolk County. On July 27, 2006, the Massachusetts court issued an order appointing an umpire (the name of which was suggested by respondents). Respondents allegedly plan to move that panel to consolidate all of the proceedings at issue, including the four cases before this Court. In light of these developments, respondents have filed with the Court a separate "Opposition to Petitioner's Notice of Hearing," requesting that the Court stay proceedings in these four cases pending resolution of their motion to consolidate before the Massachusetts panel.

---

[1] The arbitration clauses state, in pertinent part:
> As a precedent to any right of action hereunder, if any dispute shall arise between the Company and the Reinsurer with reference to the interpretation of this Agreement or their rights with respect to any transaction involved, whether such dispute arises before or after the termination of this Agreement, such dispute, upon the written request of either party, shall be submitted to three arbitrators, one to be chosen by each party, and the third by the two so chosen. . . . If the two arbitrators fail to agree in the selection of a third arbitrator within thirty days of their appointment, each of them shall name two, of whom the other shall decline one and the decision shall be made by drawing lots.

(Answer ¶ 9.)

## LEGAL STANDARD

Under section 4 of the Federal Arbitration Act, a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  Section 5 states:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but . . . if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require.

9 U.S.C. § 5.

The Ninth Circuit provided clear guidance as to how the district courts should apply these sections of the FAA in *Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp.*, 814 F.2d 1324 (9th Cir. 1987).  In that case, the Ninth Circuit upheld the district court's appointment of an umpire where, in a situation analogous to that at issue, the parties' arbitrators had failed to name an umpire after "five months of stalemate."  *Id.* at 1328.  The district court, following the FAA, first ordered the deadlocked parties to proceed with the arbitration in accordance with their arbitration agreement.  Still deadlocked after five months, one of the parties approached the district court for an order appointing the umpire.  The Ninth Circuit ruled that "[b]ecause he took it upon himself to appoint the umpire only after the parties had tried and failed to make such appointment, it is clear that the judge acted within the scope of the authority granted him by the Arbitration Act."  *Id.* at 1329.

## DISCUSSION

### 1.  Standing and ripeness

Respondents argue that the Court should dismiss the petition because the petitioner lacks standing.  Respondents argue that because "[r]espondents stand ready and willing to engage in the arbitration process in accordance with the terms of the 1978 Reinsurance Agreement or any other contract of reinsurance," petitioner has not suffered any injury in fact, there is no actual case or controversy and the matter is not ripe.  (Resp'ts' Mem. of P. & A. in Opp'n to Pet. to Compel Resp'ts

3

1 to Proceed with Arbitration 5:18-19, 6:11-13.) Despite respondents' repeated insistence that they have
2 been willing and able to proceed with the arbitration mechanism at all times, there is no doubt that the
3 parties have failed to proceed, and that each party blames the other for this failure. For example, the
4 petition alleges that "[c]ounsel for the AIG Companies did not respond to the inquiries that they were
5 willing to move forward with slate exchange." (Pet. ¶ 16.) Similarly, respondents' answer alleges that
6 "Petitioner refused to participate in the process [of selecting a third arbitrator]." (Answer ¶ 14.) There
7 is thus a case or controversy, petitioner has standing, and the case is ripe for adjudication.

### 2. Respondents' request to stay proceedings

Respondents argue that petitioner is seeking to "pervert the course of justice, to ensure that Respondents are forced to arbitrate the same dispute over and over again before a different panel on each treaty." (Opp'n to Hr'g 2:11-15.) On this basis, respondents request that the Court stay these proceedings until the Massachusetts arbitration panel has ruled on respondents' motion to consolidate these claims. Such consolidation "would make more economic and practical sense for both sides from a business point of view. It also avoids the risk of inconsistent rulings between different arbitration panels." *Id.* 4:21-23.

While the Court does not disagree that consolidation might be the parties' most efficient course, the Court is not persuaded that a stay of proceedings is warranted, or of any utility. As respondents themselves point out, "recent case law has established that the issue of consolidation is one for arbitration panels, and not the courts, to decide." (Opp'n to Hr'g 4:12-14 (citing cases).) The issue of whether, when, and how to consolidate these arbitrations is for the arbitration panels to decide. Respondents cite no basis – under caselaw, the FAA, or the arbitration clause here at issue – for the Court to refrain from proceeding with its duties under the FAA.

The Court's role in this dispute is clear. The FAA directs the Court to issue "an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed." *Id.* § 5; *see also Pacific Reinsurance*, 814 F.2d at 1324. Neither party disputes the validity or construction of the arbitration agreements. The Court therefore

4

ORDERS the parties' arbitrators to exchange slates of Third Arbitrator candidates, in accordance with the arbitration clause, within thirty days of this order. The Court further ORDERS the arbitrators to "decline one" of the other's slate, draw lots, and select umpires within seven days of exchanging slates. Should the arbitrators fail to name umpires despite these explicit instructions, the parties are ORDERED to submit the arbitrators' slates for each case, with curriculum vitae attached, within thirty-seven days of this order. Upon the application of either party, the Court will select umpires from those slates.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS Clearwater Insurance Company's petition to compel arbitration and appointment of a third arbitrator. (Docket ##1, 10 in C 06-4472; ##1, 9 in C 06-4500; ##1, 10 in C 06-4501; and ## 1, 11 in C 06-4502.)

**IT IS SO ORDERED.**

Dated: September 29, 2006

_____
SUSAN ILLSTON
United States District Judge